| U.S. Department of Justice | |
|---|---|
| Office of the Inspector General | **MEMORANDUM OF INVESTIGATION** |

| Case Number: | Reporting Office: |
|---|---|
| 2014-011369 | El Paso Area Office |

Interview of Donna Chesser

## Introduction

On January 28, 2016, Department of Justice Office of the Inspector General Senior Special Agent Eric S. Benn and Special Agent Brian Luley interviewed Donna Chesser at her residence located at 1213 89th Street, Oklahoma City, Oklahoma 73114. The interview pertained to Chesser's submission of an Affidavit of Identifying Witness and Birth Affidavit in support of Rhonda Lindstrom's (a.k.a. Rhonda Chesser) application for a passport. Chesser provided her cell phone number as (405) 410-8747.

## Chesser's Knowledge of Lindstrom

Chesser acknowledged that Lindstrom is her younger sister and they are both from Louisiana. Chesser has had limited contact with Lindstrom since Chesser left Louisiana for the Job Corp when she was approximately 18 years old, maybe 15 years or so ago. Chesser recalled receiving a phone call from Lindstrom in or around 2012. Lindstrom and Chesser communicated briefly in 2012, and Chesser recalled Lindstrom sending Chesser's son $100, a DVD player, and some movies for his birthday. Chesser also recalled that Lindstrom may have sent her some money (cash) in 2014 through the mail to help Chesser get a battery for her car. Chesser recalled that subsequent to receiving the cash, Chesser received two calls from Lindstrom, possibly during the summer of 2015 approximately three months apart. In her first call to Chesser, Lindstrom expressed her desire to get married and told Chesser she was seeing someone. Chesser thought the person Lindstrom might be seeing was from another country. In her second call to Chesser approximately three months later, Lindstrom told Chesser she was seeing a different person and was going to be getting married.

## Chesser's Affidavit of Identifying Witness and Birth Affidavit

Also during her second call to Chesser, Lindstrom told Chesser that she (Lindstrom) wanted a good vacation and needed to get a passport. In order to get the passport Lindstrom requested Chesser assist her by submitting some paperwork in support of Lindstrom's passport application acknowledging Lindstrom identity. Lindstrom told Chesser that no one knew who Lindstrom was because all of the paperwork relating to Lindstrom's identity had been lost during Hurricane Katrina. Chesser agreed to assist Lindstrom and Lindstrom subsequently requested Chesser provide her a copy of Chesser's birth certificate. Lindstrom appeared to get upset when Chesser told her that she did not have a copy of her birth certificate. Lindstrom told Chesser that Lindstrom would get Chesser a copy of her birth certificate because Lindstrom needed Chesser's birth certificate and information off of the birth certificate to support Lindstrom's application for her passport. Lindstrom also asked Chesser for Chesser's social security number, driver's license information, etc.

**SENSITIVE BUT UNCLASSIFIED**
**PERSONAL IDENTIFIABLE INFORMATION**

DEFENDANT'S EXHIBIT 15

| Special Agent Name and Signature: | Date: | Reviewer: |
|---|---|---|
| Eric S. Benn  *Eric S. Benn* | February 1, 2016 | |

OIG Form III-207/2 (04/23/07)  This document contains neither recommendations nor conclusions of the IG. It is the property of the IG and is loaned to your agency; it and its contents are not to be distributed outside of your agency.

After Chesser became inquisitive and asked Lindstrom why she needed Chesser's personal information for Lindstrom's passport application, Lindstrom became upset and asked Chesser why Chesser was asking these questions after everything Lindstrom had done for Chesser and her children. Because Lindstrom was upset, Lindstrom told Chesser that she was no longer going to get Chesser a copy of her birth certificate. In order to avoid problems with Lindstrom, Chesser recalled mailing Lindstrom copies of her driver's license and social security card to an address that Lindstrom provided Chesser.

Chesser was provided copies of the Affidavit of Identifying Witness and Birth Affidavit containing her name that was submitted by Lindstrom in support of her passport application to review. Chesser acknowledged her signature on both documents but denied that she filled out any portions of the forms. According to Chesser, upon receipt of the information from Lindstrom everything was filled out and Lindstrom had tabbed the areas for Chesser to sign and date. Chesser acknowledged that neither the top typed portion of the Affidavit of Identifying Witness form, nor the typed portions of the Birth Affidavit form were filled out by her. Chesser claimed to have no knowledge that Lindstrom had married Daniel Lindstrom and therefore could never have put that information on the form. Chesser claimed to have no knowledge of how or where to find either the Affidavit of Identifying Witness or Birth Affidavit forms. Chesser reiterated that when she received the forms from Lindstrom, the forms were already filled out and places for Chesser to sign her name and date were tabbed. During the prior conversation Lindstrom told Chesser that she (Lindstrom) would fill out the forms and send to Chesser to sign.

Upon receipt of the forms from Lindstrom, Chesser and Lindstrom spoke about Chesser getting the forms notarized. Lindstrom offered to pay to get the forms notarized, but Chesser advised Lindstrom that Chesser could get the forms notarized for free at her bank. Subsequently, Chesser drove to the Arvest bank location in Edmond, Oklahoma, and had the Affidavit of Identifying Witness and Birth Affidavit forms notarized. According to Chesser, she and Lindstrom were talking on the cell phones with each other while Chesser drove to the bank and while Chesser got the forms notarized. Lindstrom directed Chesser to mail Lindstrom back the forms, which Chesser did. While reviewing the documents Chesser noticed a copy of her birth certificate accompanying the forms. Chesser denied providing the copy of her birth certificate and claimed not to have a copy of her own birth certificate. Chesser suspected Lindstrom must have obtained a copy of Chesser's birth certificate without her knowledge and/or permission.

## Additional Information Relating to Chesser and Lindstrom

Chesser is not employed and receives social security benefits based on her diagnosis of being paranoid schizophrenic. Chesser has two children, both of whom have learning disabilities. Chesser's son has been diagnosed Autism. Chesser explained that mental "issues" run in their family and opined that maybe Lindstrom has a mental disorder. Chesser is now concerned that Lindstrom wanted her personal information because she is trying to steal her identity.

---

**Memorandum of Investigation**

**Date:**             February 1, 2016

**Case Number:**      2014-011369

Page 2
Chesser.NDTX.Chesser.Donna.00046

In one of their conversations Chesser recalled Lindstrom telling Chesser that Lindstrom worked for the FBI, but Chesser said that she could not tell anyone who Lindstrom worked for. According to Chesser, it was well known by her other siblings that Lindstrom was her mother's favorite child. Chesser described Lindstrom as very smart and studious and said Lindstrom would lock herself in the closet as a child to study. Chesser knew Lindstrom to be a nice honest person.

Chesser was questioned about Lindstrom's claim that their mother, Verona Chesser, was extremely physically abusive to Lindstrom and her other children and would often not feed them. Chesser confirmed that her mother was abusive and would often discipline them. Chesser explained that what she knew as discipline as a child is now called abuse. According to Chesser, the discipline she endured as a child made her the person she is today, which is respectful and honest. However, as Lindstrom was her mother's favorite child, Chesser said Lindstrom was disciplined far less than the other children.

**Memorandum of Investigation**

**Date:**  February 1, 2016

**Case Number:**  2014-011369

Page 3